IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CT-03021-M-RJ

BOBBY McKINLEY CANADY, )
 )
Plaintiff, )
 )
v. ) ORDER
 )
DAVID BATEHOLTS, et al., )
 )
Defendants. )

This cause is before the court on defendant Bateholts' motion for summary judgment. Mot. [D.E. 40]. For the following reasons, the court grants in part and denies in part the motion.

Relevant Procedural History:

On January 19, 2023, Bobby McKinley Canady ("plaintiff"), a state inmate proceeding without prepayment of fees, see [D.E. 2, 7], filed *pro se* a complaint under 42 U.S.C. § 1983, see Compl. [D.E. 1] at 3, 5, 8 (generally alleging Correctional Officers Bateholts and Mitchell violated his Eighth Amendment rights at Neuse C.I. on June 4, 2020, and seeking damages).

On June 13, 2023, the court allowed the action to proceed. See Order [D.E. 10].

On October 9, 2023, Mitchell moved to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). See Mot. [D.E. 17]; Mem. [D.E. 18].

Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam) ("Roseboro"), the court sent plaintiff a "Rule 12" letter notifying him about Mitchell's motion to dismiss, the consequences of failing to respond, and the response deadline. [D.E. 19].

On October 16, 2023, Bateholts answered the complaint. Answer [D.E. 21].

On October 19, 2023, plaintiff moved for an extension of time to respond to Mitchell's motion to dismiss, Mot. [D.E. 22], and the court granted in part the motion, Order [D.E. 23].

On November 3, 2023, plaintiff timely filed his response. Pl.'s Resp. [D.E. 25].

On January 24, 2024, Bateholts moved to deem admitted his requests for admission. Mot. [D.E. 26].

On February 2, 2024, the court, *inter alia*, granted Mitchell's motion to dismiss but denied Bateholts' motion to deem admitted his requests for admission. Order [D.E. 28].

On February 7, 2024, the court entered a scheduling order. Order [D.E. 29].

On May 21, 2024, the court granted plaintiff's motion for an extension of time to complete discovery. Order [D.E. 36].

On August 5, 2024, Bateholts filed a motion for summary judgment, Mot. [D.E. 40], a memorandum [D.E. 41], a statement of material facts [D.E. 42], an appendix [D.E. 43], a motion for leave to manually file an exhibit [D.E. 44], proposed sealed exhibits [D.E. 45], and a motion to seal [D.E. 47]. Also on that date, pursuant to Roseboro, the court notified plaintiff about Bateholts' motion, the response deadline, and the consequences of failing to respond. [D.E. 48].

On August 7, 2024, the court granted Bateholts' motion for leave to manually file an exhibit. Order [D.E. 49].

On September 5, 2024, the court granted Bateholts' motion to seal, directed the clerk to update the docket to reflect plaintiff's present address, and directed plaintiff to show cause as to whether he intended to prosecute the case. See Order [D.E. 50].

On September 30, 2024, plaintiff responded to the show cause order, noted his responses were late due to several prison transfers, and sought an extension of time to respond. [D.E. 51].

2

On October 1, 2024, the court found plaintiff had shown good cause and allowed him until October 22, 2024, to respond to Bateholts' motion for summary judgment. Order [D.E. 52].

On October 9, 2024, plaintiff moved for a copy of the complaint. Mot. [D.E. 53].

On October 18 and 23, 2024, respectively, plaintiff moved for leave to file an amended complaint, see Mot. [D.E. 54], and filed a proposed amended complaint [D.E. 55].

On November 21, 2024, plaintiff moved for appointment of counsel. Mot. [D.E. 57].

On December 9, 2024, the court, *inter alia*: denied plaintiff's motions to appoint counsel for a copy of the complaint, and for leave to file an amended complaint, but allowed plaintiff an extension of time to respond to Bateholts' motion for summary judgment. Order [D.E. 58].

On December 30, 2024, plaintiff moved for an extension of time to file a response to Bateholts' motion for summary judgment. Mot. [D.E. 59].

On January 2, 2024, plaintiff filed what the court liberally construes as a response in opposition to Bateholts' motion for summary judgment. See Pl.'s Resp. [D.E. 60].

On January 7, 2025, the court granted in part plaintiff's December 30, 2024, motion to extend time, allowing him until January 22, 2024, to file any further response to Bateholts' motion for summary judgment. Order [D.E. 61]. Plaintiff, however, did not file any further response.

Statement of Facts:

A party's statement of undisputed material facts is "deemed admitted for purposes of the motion [for summary judgment] unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." Local Civ. R. 56.1(a)(2); Felton v. Moneysworth Linen Serv., Inc., 295 F. Supp. 3d 595, 597 n.1 (E.D.N.C. 2018); Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 329 n.1 (E.D.N.C. 2017), aff'd, 697 F. App'x 257 (4th Cir

3

2017) (per curiam) (unpublished); see Fed. R. Civ. P. 56(e)(2). Bateholts' statement cites the underlying evidence, which the court has reviewed. Plaintiff did not file an opposing statement.

On June 4, 2020, plaintiff was incarcerated at Neuse C.I. Bateholts' Stmt. Mat. Facts [D.E. 42] at ¶1. Circa 12:38 p.m., while Bateholts was conducting rounds in unit B-1, Bateholts encountered plaintiff, who was assigned to unit B-3. Id. at ¶¶2–3. Bateholts did not know who plaintiff was, and he asked for identification. Id. at ¶4. Plaintiff explained his identification was in his locker in unit B-3. Id. at ¶5. Bateholts began escorting plaintiff to unit B-3. Id. at ¶6. Plaintiff "had words" with Bateholts, ignored Bateholts, and walked away. Id. at ¶7. Bateholts instructed plaintiff to submit to handcuffs but, instead of complying with the order, plaintiff asked, "for what? It's no reason." Id. at ¶8. Bateholts "attempted to take Plaintiff's right hand behind Plaintiff's back, but Plaintiff jerked his arm away and resisted Mr. Bateholts." Id. at ¶9. "Plaintiff started walking into an office where Sergeant William Mitchell was sitting." Id. at ¶10. "Bateholts attempted to handcuff Plaintiff for a second time." Id. at ¶11. "Within seconds, Plaintiff rapidly turned to face Mr. Bateholts and moved toward him, shouting in Mr. Bateholts's face." Id. at ¶12. At the same time, Sergeant Williams said, "I got it." Id. at ¶13. "In response to Plaintiff's abrupt about face, Mr. Bateholts stepped back and extended his left arm." Id. at ¶14. Plaintiff continued to step toward Bateholts. Id. at ¶15. "Bateholts instinctively used his left arm to push Plaintiff back" but plaintiff "did not submit to handcuffs" and resisted Bateholts' effort. Id. at ¶16. "Using his other hand, Mr. Bateholts struck Plaintiff on 'the top of [his] hand twice' using the open handcuffs (the 'Handcuff Strike')." Id. at ¶17. "No further force was used," and the "entire interaction lasted less than sixty seconds." Id. at ¶18. "At no time during the Handcuff Strike did Plaintiff fall on his neck or back." Id. at ¶19.

4

After the "Handcuff Strike," plaintiff was evaluated by a Neuse C.I. medical provider. Id. ¶20. As his subjective complaint, plaintiff stated that Bateholts "was trying to put cuffs on me and then he struck me in the top of [the] hand twice with [them]." Id. at ¶21. "Plaintiff made no mention of any injury to his neck." Id. at ¶22. "The medical evaluation found that Plaintiff sustained 'broken skin top of right hand (size of standard pencil eraser) no bleeding. Mild swelling 3rd knuckle area, right hand.'" Id. at ¶23. "A subsequent x-ray 'showed no evidence for recent fracture or dislocation.'" Id. at ¶24. "Plaintiff did not endorse pain or injury at any other location after the Handcuff Strike." Id. at ¶25.

"On February 24, 2022, for the first time, Plaintiff presented to the [Neuse C.I.] medical clinic and reported neck pain." Id. at ¶26. On April 12, 2022, plaintiff rated his pain as a "10." Id. at ¶27. On April 29, 2022, plaintiff's MRI "revealed narrowing of his spinal canal, the presence of osteophyte process disease complex at C5-C6 and C6-C7, bilateral degenerative disease with neural foraminal stenosis at C7-T1, and a disc herniation at C5-C6 (collectively, the 'MRI Findings')." Id. at ¶28. "On October 24, 2022, Plaintiff received an anterior cervical discectomy and fusion at C5-C6." Id. at ¶29. "None of Plaintiff's medical providers ever attributed the MRI Findings, or Plaintiff's need for surgery, to the Handcuff Strike." Id. at ¶30.

### Legal Standard:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The moving party initially must demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp.

5

v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

## Discussion:

As an initial matter, because North Carolina has not waived immunity, plaintiff's claims against Bateholts in his official capacity are barred by the Eleventh Amendment. Will v. Michigan Dep't of State Police, 491 U.S. 58, 66, 71 (1989).

For an Eighth Amendment excessive force claim, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992) (citing Whitley v. Albers, 475 U.S. 312 (1986)). Considering a prisoner's excessive force claim, courts "must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Id. at 8 (citation omitted).

"The objective component measures the nature of the force employed, asking whether that force 'was sufficiently serious to establish a cause of action.'" Dean v. Jones, 984 F.3d 295, 302 (4th Cir. 2021) (quoting Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019)). "This is not a high bar; de minimis or trivial force is not enough, but anything more will suffice." Id.

The subjective component inquires "whether the officers acted with a 'sufficiently culpable state of mind.'" Id. (quoting Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996)). "[T]his is a demanding standard" because the "state of mind required . . . is 'wantonness in the infliction of pain.'" Brooks, 924 F.3d at 112–13 (quoting Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)).

Factors for whether an officer inflicted pain wantonly include:

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response."

Iko, 535 F.3d at 239 (quoting Whitley, 475 U.S. at 321).

Here, the soundless video captures a portion of the use-of-force event from 12:37 to 12:38 p.m. in Neuse C.I. Unit B Corridor and depicts: Sergeant Mitchell, wearing blue gloves, steps into an open office doorway, and looks back at plaintiff and Bateholts who are conversing in the foreground; Bateholts, also wearing blue gloves, twice points toward Mitchell with his right hand; Mitchell walks into the office and out of camera view; plaintiff walks away from Bateholts and toward the office; Bateholts gestures toward the wall with the walkie talkie in his left hand, but plaintiff continues to walk away from Bateholts and appears to speak in the direction of the office; Bateholts replaces his walkie talkie on his belt and, while conversing with plaintiff, retrieves his handcuffs from his belt and grasps plaintiff's right arm; plaintiff pulls his right arm away from Bateholts and turns toward the office doorway; Bateholts grasps plaintiffs shoulders and then attempts to apply handcuffs; plaintiff turns to face Bateholts and steps out of the doorway toward him; Bateholts extends his left arm into plaintiff's chest, pushing plaintiff into the doorway and out of camera view; Bateholts makes a striking motion with the handcuffs while a gloved hand, presumably Mitchell's, touches Bateholts' chest; Bateholts moves into the office doorway, lifting

7

his right knee; Bateholts briefly reappears in the hallway, but goes back into the office; about 10 seconds later, Bateholts returns to the hallway and walks away. See Bateholts' Ex. 3, [D.E. 45]. Notably, this video neither shows the Handcuff Strike blow, nor whether the knee lift hit plaintiff, nor depicts any further struggle that may have occurred in the Sergeant's Office. Id.

The record reflects a June 5, 2020, witness statement by Sergeant Mitchell stating:

On June 4, 2020, at approximately 12:38, I Sergeant Mitchell, heard Officer Bateholts and [plaintiff] arguing in the Bravo Corridor areas as I [stepped] into the Bravo Sergeant Door. Officer Bateholts is telling [plaintiff] to turn around and be handcuff [sic]. I told Bateholts to stop and explain to me what was going on. Bateholts started raising his voice telling the offender to turn around. As I was telling Officer Bateholts to stand down, it is at this time when Officer Bateholts pushed me out of the way, swinging his handcuffs striking [plaintiff] on his hand twice. As I held [plaintiff,] I order [sic] Officer Bateholts to report back to his dorm. [Plaintiff] was escorted to Bravo Dorm Medical.

[D.E. 55-1] at 2.

The record also reflects the parties conflicting sworn responses to interrogatories. Compare [D.E. 43-4] (Bateholts' response to plaintiff's first interrogatory, answering, *inter alia*: Bateholts gave plaintiff direct orders to submit to handcuffs which he refused and ignored; "In light of Plaintiff's repeated noncompliance with direct orders," "Bateholts became concerned for both his own safety, and for the safety of other correctional officers and inmates in the area"; Bateholts attempted, with soft touch, to put plaintiff's hand behind his back but he jerked his arm away and said, "you have no reasons to cuff me"; Bateholts attempted a second soft touch to apply handcuffs, but plaintiff pulled back; while Mitchell said, "I got it," plaintiff "abruptly turned to face Mr. Bateholts and began moving toward him while yelling in" Bateholts' face; in response to plaintiff's noncompliance and sudden about face, Bateholts "anticipated an elevated level of resistance and feared for his own safety"; "In an effort to protect himself and secure compliance

8

with his orders," Bateholts "instinctively used his left arm to push Plaintiff back, brought his knee up to block any potential assault from Plaintiff, and struck Plaintiff on the top of his hand twice using open handcuffs"; "At no time did Plaintiff fall or hit his neck"; and "No additional force was used"); with [D.E. 32] at 4 (plaintiff's response to Bateholts' third interrogatory, answering, *inter alia*: Bateholts said, "'give me your hands[,]' not submit to the cuffs"; Bateholts tried to grab plaintiff's hand again but plaintiff pulled away and said, "You have not reason to cuff me[.] You [are] mad because I'm about to tell the Sgt on you"; Sgt. Mitchell stepped out of the office and stated, "What's going on"; as plaintiff was explaining, Bateholts grabbed plaintiff's arm aggressively, plaintiff pulled back, and Mitchell "put his arm between us and stated[,] 'stand down I got this under control'"; then Bateholts "tried to slap the cuffs around [plaintiff's] wrist but they got stuck into a hook shape and [Bateholts] just swung and sung and started knee spearing [plaintiff] trying to take [plaintiff] down and just pushed [plaintiff] into the office[,] jarring [plaintiff's] neck; plaintiff turned around to see Bateholts trying to come in the office so he "backed up and hit the SGT desk and [his] neck snapped back again"; plaintiff "felt the burn but [he] was so mad and scared" that Bateholts "was gonna come in there"; and "SGT Mitchell blocked the door and finally told Officer Bateholts to go back to his block"), and id. at 11 (plaintiff's response to Bateholts' tenth interrogatory answering that Mitchell told Bateholts to "stand down" because Mitchell had the situation under control, but Bateholts "still tried to cuff [him] and take [him] down by knee spearing [him] and tried to push through the SGT to do God knows what," and that "disobeying the SGT made it sadistic because [Bateholts] lost it all in front of the camera.").

The record shows plaintiff suffered injury due to the use-of-force incident. See Bateholts' App., Ex. 4 [D.E. 45-4] at 2–4 (June 4, 2020, clinical encounter, noting: as subjective complaint,

9

"the officer was trying to put cuffs on me and then he struck me on the top of hand twice with um"; as injury, "broken skin top of right hand (size of pencil eraser) no bleeding. Mild swelling 3rd knuckle area right hand"; as "mechanism," plaintiff "states [he was] struck twice in top of right hand with metal cuffs by officer"; as review of symptoms, "musculoskeletal . . . mild swelling present middle knuckle right hand"; on exam, "tenderness" and a "small superficial abrasion top of right hand, no bleeding present"; as assessment, "comfort, impaired"; as disposition, "follow-up at sick call as needed"; and, as other, "nonurgent / abrasion / contusions skin abrasion cleaned and dressed per standing orders"); id., Ex. 5 [D.E. 45-5] at 2–4 (June 8, 2020, clinical encounter note, stating, *inter alia*: "patient stated that he was hit with metallic object (hand cuff) on the dorsum of his right hand by one of the officers on 06/04/2020"; "Presently, he is still complaining of pain on the right hand and also complaining of inability to move his right wrist freely"; "He rated his pain 6/10"; "X-ray of the right hand and right wrist performed today . . . showed no evidence for recent fracture or dislocation"; "the X-ray showed old fracture of the 5th metacarpal bone"; on examination, as to "extremity," "swollen dorsum of right hand, tender to touch, restricted flexion, extension, abduction and adduction at the right wrist. Restricted flexion and extension of the right index, middle and ring fingers"; as to "plan," "will order pain medication for patient" and inmate "may go back to his camp"; as to assessment, "temporary/acute" injury of the right wrist, hand, and fingers; and placing new medication orders for 600 mg Ibuprofen, every six hours as needed, for seven days, and Acetaminophen, every six hours as needed, for fourteen days).

This record, however, does not indicate that plaintiff complained of neck or back pain close in time to this use-of-force incident. Cf. id., Ex. 6 [D.E. 45-6] at 2–4 (Feb. 24, 2022, clinical encounter subjective complaint of neck pain, bilateral hand numbness, and left-hand weakness).

10

Viewing the evidence and the reasonable inferences drawn therefrom in the light most favorable to plaintiff, Scott, 550 U.S. at 378, issues of material fact preclude entry of summary judgment for Bateholts on plaintiff's excessive force claim because, as to the objective component, the record supports a finding that Bateholts used more than *de minimis* or trivial force and, as to the subjective component, a reasonable factfinder could infer that Bateholts' June 4, 2020, use of force against plaintiff amounted to wanton infliction of pain, see Hudson, 503 U.S. at 7–8; Whitley, 475 U.S. at 321; Dean, 984 F.3d at 302–303; Brooks, 924 F.3d at 116–18.

Because there are genuine issues of material fact whether Bateholts' use of force violated plaintiff's clearly established Eighth Amendment rights, Bateholts also is not entitled to a finding of qualified immunity on summary judgment. See Tolan v. Cotton, 572 U.S. 650, 655–56 (2014).

## Conclusion:

In sum, the court: GRANTS IN PART Bateholts' motion for summary judgment [D.E. 40] as to official capacity claims but otherwise DENIES the motion; REFERS the case to Magistrate Judge Robert B. Jones, Jr. for a court-hosted settlement conference; and APPOINTS North Carolina Prisoner Legal Services, Inc. for the limited purpose of assisting plaintiff in the settlement conference, see Standing Order 21-SO-11 at ¶7. Judge Jones will notify the parties how he wishes to proceed concerning the settlement conference, including the date on which it will be held.

SO ORDERED this 14th day of February, 2025.

RICHARD E. MYERS II
Chief United States District Judge

11